No. 18-1322C
(Senior Judge Horn)

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

CHRISTOPHER R. GREGORY,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

## DEFENDANT'S MOTION FOR
## JUDGMENT UPON THE ADMINISTRATIVE RECORD

JOSEPH H. HUNT
Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

OF COUNSEL:

MAJOR GREGORY J. MORGAN
Litigation Attorney
Air Force Legal Operations Agency
1500 West Perimeter Rd., Suite 1370
Joint Base Andrews-Naval Air Facility,
MD  20762

DOUGLAS K. MICKLE
Assistant Director

WILLIAM P. RAYEL
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
PO Box 480
Ben Franklin Station
Washington, DC 20044
Telephone:  (202) 616-0302
Facsimile:  (202) 307-0972
E-mail:  William.Rayel@usdoj.gov

January 10, 2020

Attorneys for Defendant

# TABLE OF CONTENTS

QUESTION PRESENTED ....................................................................................................1

STATEMENT OF THE CASE ...........................................................................................2

    I.       Nature Of The Case ..........................................................................................2

    II.     Statement Of Facts ...........................................................................................2

          A.      Background, Initial Treatment For Ankylosing Spondylitis, And Personnel Reliability Program (PRP) .........................................................2

          B.      Mr. Gregory's MEB And Physical Evaluation Board (PEB) Proceedings .................................................................................................3

          C.      Secretary Of The Air Force Personnel Council (SAFPC) Appeal..............5

          D.      VA Proceedings .........................................................................................6

          E.      Initial AFBCMR Proceedings And Decision.............................................7

          F.      Court Proceedings And AFBCMR Proceedings And Decision On Remand ....................................................................................................10

ARGUMENT ...................................................................................................................11

    I.       Standard Of Review ......................................................................................11

    II.     Mr. Gregory Has Not Demonstrated That The AFBCMR's Denial Of His Request To Increase His Disability Rating For Ankylosing Spondylitis Was Irrational, Unlawful, Or Unsupported By Substantial Evidence .........................13

          A.      VASRD DC 5002's Alternative Rating Criteria........................................13

          B.      The AFBCMR Rationally Declined To Rate Mr. Gregory Higher Than 20 Percent For His Ankylosing Spondylitis As An Active Process Due To A Lack Of Evidence Of Incapacitating Exacerbations Of His Condition ........................................................................................14

          C.      The AFBCMR Rationally Declined To Rate Mr. Gregory For Chronic Residuals Of Ankylosing Spondylitis .........................................18

    III.    The AFBCMR Rationally Declined To Rate Mr. Gregory's Radiculopathy Sciatic Involvement In His Legs Because They Were Not Unfitting Conditions ....................................................................................................19

IV. Mr. Gregory Has Waived Any Claim That His MEB Was Insufficient And In Any Event, He Has Not Demonstrated Any Prejudicial Legal Error In His MEB .................................................................................................................20

  A. Mr. Gregory Waived His Claim That His MEB Was Insufficient ............20

  B. Mr. Gregory Has Not Demonstrated That The MEB Violated Any Law ........................................................................................................21

  C. Mr. Gregory Has Not Demonstrated That Any Error By The MEB Was Prejudicial ...........................................................................................23

CONCUSION ............................................................................................................24

**Index to Appendix**

Document                   Page

Excerpts from Department of Defense Instruction 1332.38, dated July 10, 2006 ........................A1

Excerpt from DoD Undersecretary for Personnel and Readiness Policy Memorandum on Implementing Disability Related Provision of the National Defense Authorization Act of 2008 (Pub L. 110-181), dated October 14, 2008 ....................................................A4

Excerpts from Air Force Instruction 36-3212, dated November 27, 2009 ...................................A9

# TABLE OF AUTHORITIES

**Cases**

*Banerjee v. United States*,
    77 Fed. Cl. 522 (2007) ............................................................................. 11, 12, 22

*Bannum, Inc. v. United States*,
    404 F.3d 1346 (Fed. Cir. 2005) ............................................................................. 11

*Bateson v. United States*,
    48 Fed. Cl. 162 (2000) ............................................................................. 11

*Butler v. Principi*,
    244 F.3d 1337 (Fed. Cir. 2001) ............................................................................. 22

*Dorl v. United States*,
    200 Ct. Cl. 626 (1973) ............................................................................. 12

*Fisher v. United States*,
    81 Fed. Cl. 155 (2008) ............................................................................. 12

*Heisig v. United States*,
    719 F.2d 1153 (Fed. Cir. 1983) ............................................................................. 11, 12, 19

*Lee v. United States*,
    32 Fed. Cl. 530 (1995) ............................................................................. 3

*Metz v. United States*,
    466 F.3d 991 (Fed. Cir. 2006) ............................................................................. 21

*Myers v. United States*,
    50 Fed. Cl. 674 (2001) ............................................................................. 12

*Peterson v. United States*,
    104 Fed. Cl. 196 (2012) ............................................................................. 11

*Petitti v. McDonald*,
    27 Vet. App. 415 (2015) ............................................................................. 14

*Richardson v. Perales*,
    402 U.S. 389 (1971) ............................................................................. 12

*Rose v. United States*,
    35 Fed. Cl. 510 (1996) ............................................................................. 12

*Stine v. United States*,
　92 Fed. Cl. 776 (2010) ........................................................................ 11, 17, 20

*United States v. L.A. Tucker Truck Lines, Inc.*,
　344 U.S. 33 (1952) ..................................................................................... 21

*Ward v. United States*,
　133 Fed. Cl. 418 (2017) .............................................................................. 17

*Wollman v. United States*,
　108 Fed. Cl. 656 (2013) ............................................................................... 2

## <u>Statutes</u>

10 U.S.C. Chap. 61 ......................................................................................... 3

10 U.S.C. § 1201 ........................................................................................... 19

10 U.S.C. § 1203 ........................................................................................... 20

## <u>Code of Federal Regulations</u>

32 C.F.R. § 865.4 .......................................................................................... 20

38 C.F.R. § 4.71a ................................................................................... passim

38 C.F.R. § 4.79 ........................................................................................... 15

38 C.F.R. § 4.88b .......................................................................................... 15

38 C.F.R. § 4.97 ............................................................................................ 15

38 C.F.R. § 4.114 .......................................................................................... 15

38 C.F.R. § 4.130 .......................................................................................... 15

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CHRISTOPHER R. GREGORY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 18-1322C |
| | ) | (Senior Judge Horn) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION FOR
JUDGMENT UPON THE ADMINISTRATIVE RECORD**

Pursuant to Rule 52.1(c) of the Rules of the United States Court of Federal Claims

(RCFC), defendant, the United States, respectfully requests that the Court enter judgment upon

the administrative record in favor of the Government.  The United States Air Force (Air Force)

determined that plaintiff, Christopher R. Gregory, was unfit for duty due to Ankylosing

Spondylitis and honorably discharged him with disability severance pay.  Mr. Gregory alleges

that the 20 percent disability rating assigned by the Air Force was erroneous and, instead, he

should have been rated higher and medically retired.  But Mr. Gregory's 20 percent disability

rating is supported by substantial evidence.  Moreover, Mr. Gregory has not demonstrated that

his medical evaluation board (MEB) proceedings were contrary to law or that any irregularities

in his MEB were prejudicial.   Accordingly, the Court should grant the Government judgment

upon the administrative record.

**QUESTION PRESENTED**

Whether the decision of the Air Force Board for the Correction of Military Records

(AFBCMR) to deny Mr. Gregory's request for an increased disability rating for his unfitting

Ankylosing Spondylitis was lawful, rational, and supported by substantial evidence.

<u>**STATEMENT OF THE CASE**</u>

**I.     <u>Nature of the Case</u>**

Mr. Gregory, a former Captain in the Air Force, was honorably discharged on August 28, 2012, with severance pay, based upon a 20 percent disability rating for his unfitting condition of Ankylosing Spondylitis. *See* AR 65-67. Mr. Gregory alleges that he should have been given a rating of at least 40 percent and provided the disability retirement pay and benefits associated with such a rating. Compl. 5.

**II.    <u>Statement Of Facts</u>**

**A.     Background, Initial Treatment For Ankylosing Spondylitis, And Personnel Reliability Program (PRP)**

Mr. Gregory served on active duty in the Air Force from May 31, 2006, until August 28, 2012. AR 46. Mr. Gregory served as a B-52 pilot for the Air Force Global Strike Command. *See id.* at 113, 123.

In February 2010, Mr. Gregory sought medical treatment for low back pain that had been bothering him for approximately three months. *Id.* at 122. Mr. Gregory was ultimately diagnosed with "Ankylosing Spondylitis," *id.* at 126, 181, which "is a systemic illness of unknown etiology, affecting young persons predominantly, and producing pain and stiffness as a result of inflammation of the sacroiliac, intervertebral, and costovertebral joints[.]" *Wollman v. United States*, 108 Fed. Cl. 656, 658 n.2 (2013) (quoting *Dorland's Illustrated Medical Dictionary,* 1779 (31st ed. 2007)); *see also* AR 38 (Mr. Gregory's treating rheumatologist describing Ankylosing Spondylitis as "an inflammatory arthritis").

After Mr. Gregory began seeing a rheumatologist in March 2010, he started taking methotrexate and, in July 2010, he started taking Humira. AR 123. The Humira significantly improved Mr. Gregory's stiffness and pain, and, accordingly, the methotrexate was discontinued

in March 2011. *Id.* In May 2010, even before he began taking Humira, Mr. Gregory stated that his pain was "[n]ot incapacitating." *Id.* at 235 (emphasis omitted).

Mr. Gregory was suspended from the PRP on multiple occasions due to these medications and their potential adverse side effects, and, thus, was unable to perform all of his duties during those suspensions. *See id.* at 101, 195-96.[1] In May 2011, Mr. Gregory denied that "his pain is distracting or impairing to his PRP duties[.]" *See* AR 97. Mr. Gregory was ultimately decertified from the PRP in December 2011 due to a "medical related issue that is incompatible with PRP." *Id.* at 39-40.

### B.   Mr. Gregory's MEB And Physical Evaluation Board (PEB) Proceedings

In March 2011, Mr. Gregory was evaluated by a MEB. *See id.* at 122-26.[2] The MEB conducted a thorough review of Mr. Gregory's health, including range of motion testing for Mr. Gregory's back, hips, knees, neck, and extremities. *See id.* The MEB diagnosed Mr. Gregory with chronic low back pain and Ankylosing Spondylitis and, in May 2011, referred him to a PEB. *Id.* at 114, 126.[3]

---

[1] The Personnel Reliability Program seeks to ensure that only those meeting high standards of individual reliability perform duties associated with nuclear weapons. *See Lee v. United States*, 32 Fed. Cl. 530, 534 (1995).

[2] A MEB evaluates and documents the medical status and possible duty limitations of servicemembers referred into the Department of Defense (DoD) Disability Evaluation System (DES). *See* DoD Instruction (DoDI) 1332.38, ¶ E3.P1.2.1 (July 10, 2006) (A2) ("A_" refers to the appendix attached to this brief.).

[3] A PEB determines: 1) the fitness of servicemembers with medical impairments to perform their military duties; and 2) for members determined unfit for duty, their entitlement to disability benefits under 10 U.S.C. Chap. 61. DoDI 1332.38, ¶ E3.P1.3.1 (A3). An informal PEB first conducts a documentary review to provide initial findings and recommendations. *Id.* at ¶ E3.P1.3.2 (A3). If an eligible servicemember disagrees with the informal PEB, he may request a formal PEB, which includes a hearing. *See id.* at ¶ E3.P1.3.3 (amended by Policy

On April 29, 2011, as part of the MEB process, Mr. Gregory's commander, Lieutenant Colonel John R. Edwards, submitted a memorandum regarding the effect of Mr. Gregory's condition on the unit mission. *Id.* at 115-17. Lt. Col. Edwards recommended that Mr. Gregory be retained. *Id.* at 117. He stated that Mr. Gregory was "not currently performing flying related duties but maintains normal work hours performing additional duties." *Id.* at 115 (emphasis omitted). Lt. Col. Edwards also noted that Mr. Gregory "has not missed coming into work and performing his additional duties" due to his condition. *Id.* (emphasis omitted). He further noted some potential issues with flying with Mr. Gregory's condition, but also stated that, "[s]ince on treatment," Mr. Gregory's "flare ups have decreased significantly and he feels able to perform duties." *Id.* at 116. Moreover, Lt. Col. Edwards explained that, "[r]ight now, B52s are deploying to Guam and if [Mr. Gregory] has a flying waiver there is no reason that he could not deploy there." *Id.*

Similarly, on May 3, 2011, Mr. Gregory submitted a letter to the MEB explaining why he believed that the Air Force should retain him. *Id.* at 120. Mr. Gregory explained that, before starting treatment, he had "extremely bad" stiffness and discomfort, but "continued to perform [his] duties (even while in pain)." *Id.* He also stated that, since starting his medications, his "symptoms have considerably improved" and he had "not had any of the extremely debilitating symptoms." *Id.* He explained that he always flies with another pilot and Ankylosing Spondylitis "is not the type of disease that is going to all of the sudden incapacitate me." *Id.* Mr. Gregory saw no reason why he should be unable to perform normal flight duties or, at a minimum, fly remote-piloted airplanes from a computer. *Id.*

Memorandum on Implementing Disability-Related Provisions of the National Defense Authorization Act of 2008 (Pub L. 110-181) (Oct. 14, 2008)) (A3, 7-8).

In June 2011, an informal PEB found Mr. Gregory unfit for continued duty due to "Chronic Low Back Pain secondary to Ankylosing Spondylitis" and recommended that he be medically discharged with a 10 percent disability rating under Department of Veterans Affairs (VA) Schedule of Disability Ratings (VASRD) Diagnostic Code (DC) 5240. *Id.* at 110.[4] In response, Mr. Gregory requested a formal PEB hearing. AR 100, 107.

At the formal PEB, Mr. Gregory abandoned his position that he was fit for duty and, instead, asserted that he was "unfit to perform the duties of his grade and [Air Force Specialty Code] due to his Ankylosing Spondylitis, which should be rated at least 40% disability under DC 5002 for chronic residuals of disabilities DC 5240 Neck 10%, DC 5240 Back 10%, DC 5271 Bilateral Ankles 21.9% for a total 40% disability and permanent retirement." *Id.* at 97; *see also id.* at 100. In August 2011, the formal PEB agreed with Mr. Gregory that he should be rated under DC 5002 ("Arthritis rheumatoid (atrophic)," 38 C.F.R. § 4.71a), but disagreed that he should be rated for "chronic residuals." *See* AR 97. Rather, the formal PEB recommended a 20 percent disability rating for his Ankylosing Spondylitis "[a]s an active process," based upon "one or two exacerbations a year in a well-established diagnosis." *Id.*; 38 C.F.R. § 4.71a.

C.  **Secretary Of The Air Force Personnel Council (SAFPC) Appeal**

In September 2011, Mr. Gregory appealed to the SAFPC, pursuant to AFI 36-3212, ¶ 5.4.1 (A11). AR 26. Mr. Gregory again argued that he should be granted a 40 percent rating based upon the alleged "chronic residuals" of his condition. *See id.* at 27-30. Alternatively, Mr. Gregory argued that he was entitled to a 40 percent rating under the "active process" criteria in DC 5002, *id.* at 30-31, which requires "[s]ymptom combinations productive of definite

---

[4] The Air Force rates unfitting disabilities in accordance with the VASRD. Air Force Instruction (AFI) 36-3212, ¶¶ 1.7, 1.9 (Nov. 27, 2009) (A10). The VASRD is found in 38 C.F.R. Part 4.

impairment of health objectively supported by examination findings or incapacitating exacerbations occurring 3 or more times a year[.]" 38 C.F.R. § 4.71a. Mr. Gregory claimed that he had "flares" every other month that were "incapacitating." AR 30. Mr. Gregory also alleged various other errors by the MEB and PEB. *See id.* at 31-35.

In May 2012, the SAFPC denied Mr. Gregory's appeal and directed that Mr. Gregory be discharged and receive severance pay with a 20 percent disability rating. *Id.* at 67-70. The SAFPC determined that Mr. Gregory did not suffer from any "incapacitating" exacerbations that would justify a 40 percent rating under the "active process" criteria in DC 5002. *Id.* at 68. The SAFPC adopted the definition of "incapacitating" found in 38 C.F.R. § 4.71a (DC 5243), *i.e.*, "requires bed rest prescribed by a physician and treatment by a physician." AR 68. The SAFPC found that the record, particularly Mr. Gregory's own statements, did not support any episodes meeting this definition. *See id.* at 67-68. The SAFPC also rejected Mr. Gregory's request for a rating based upon "chronic residuals," finding that Mr. Gregory's symptoms related to Ankylosing Spondylitis were "acute," not "chronic." *See id.* at 69.

Accordingly, Mr. Gregory was honorably discharged on August 28, 2012, with severance pay. *See* AR 65-67.

### D.　VA Proceedings

In 2013, the VA assigned Mr. Gregory a 20 percent disability rating for his Ankylosing Spondylitis with thoracic spine strain, with an effective date of August 29, 2012. AR 46-47, 49-50. Mr. Gregory also received VA disability ratings for other conditions, including 10 percent ratings for both "radiculopathy sciatic involvement left lower extremity" and "radiculopathy sciatic involvement right lower extremity[.]" *See id.* at 47-48, 53-54.

Mr. Gregory disagreed with his VA rating for Ankylosing Spondylitis, and, in 2017, the VA assigned him a disability rating a 60 percent under DC 5002 for "Ankylosing spondylitis in the cervical spine, thoracolumbar spine, sacroiliac joint, bilateral ankle and foot/toes," effective August 29, 2012. *See id.* at 184-93. The VA decision review officer found that Mr. Gregory's "ankylosing spondylitis is an active process and it affects [his] cervical spine, sacroiliac joint, thoracolumbar spine, right ankle, foot/toes, und left ankle foot/toes." *Id.* at 193. The 60 percent rating was due to a finding of "severely incapacitating exacerbations occurring four or more times a year," considering evidence that included a VA examination in 2016 and VA outpatient treatment records from March 2014 to May 2017. *See id.* at 192-93; *see also* 38 C.F.R. § 4.71a (DC 5002). The VA did not rate Mr. Gregory for "chronic residuals" under DC 5002, and the decision review officer stated that "[s]eparate evaluations for each joint involved are not rated separately unless the disease is considered inactive." *See* AR 193.

### E.     Initial AFBCMR Proceedings And Decision

In August 2015, Mr. Gregory petitioned the AFBCMR for a "minimum 40% disability rating" from the Air Force. *Id.* at 14. Before the AFBCMR, Mr. Gregory once again primarily argued that he should be rated at 40 percent under DC 5002 based upon either his alleged "residuals" from Ankylosing Spondylitis or his allegedly incapacitating episodes based upon the disease as an active process. *See id.* at 14-17. Mr. Gregory also argued that he should receive 10 percent disability ratings for each lower extremity for "bilateral sciatic radiculopathy[.]" *Id.* at 16.

In his AFBCMR petition, Mr. Gregory included a June 2012 letter from his rheumatologist at that time, Dr. Thomas A. Pressly. *Id.* at 38. Dr. Pressly stated that Mr. Gregory "was presenting with symptoms including incapacitating episodes of 11-12 a year

before treatment," but, "[w]ith treatment, the condition has stabilized and now [Mr. Gregory] only presents with 4-5 incapacitating episodes a year." *Id.* In his letter, Dr. Pressly did not define "incapacitating" or state that he had prescribed "bed rest" for Mr. Gregory. *Id.* Dr. Pressly also referred to Mr. Gregory's Ankylosing Spondylitis as a "chronic condition" that affects his "limitation of motion in his neck, back, [sacroiliac] joints and feet/ankles to varying degrees." *Id.* at 38

The Air Force Personnel Center (AFPC) Disability Office and AFBCMR Individual Mobilization Augmentee Medical Consultant, Colonel Jimmie J. Drummond, issued advisory opinions recommending that Mr. Gregory's petition be denied. *Id.* at 143-47. Col. Drummond concurred with the 20 percent disability rating, finding insufficient evidence of "incapacitating events" to support a 40 percent rating for Ankylosing Spondylitis, utilizing a definition of incapacitating from the VASRD. *See id.* at 146. He acknowledged Dr. Pressly's June 2012 letter, but found that in "the progress notes, both pre- and post-treatment, and personal statements from the applicant, there is insufficient supportive evidence to support the frequency and severity of the applicant's condition as detailed by Dr. Pressly." *Id.* Col. Drummond also acknowledged that Mr. Gregory had other conditions in addition to Ankylosing Spondylitis, but opined that none these conditions "either singularly or in aggregate, would represent a condition(s) of such severity as to represent the cause of service termination (unfitting), and therefore, not ratable." *Id.* Likewise, the AFPC Disability Office explained that only unfitting conditions could be assigned military disability ratings, and Mr. Gregory's bilateral lower extremity for sciatic radiculopathy conditions were not alleged to be unfitting before the formal PEB or SAFPC. *Id.* at 144.

Mr. Gregory responded to the advisory opinions, attaching additional treatment notes from Dr. Pressly, and he later filed the 2017 VA opinion with the AFBCMR. *Id.* at 150-94. In light of Mr. Gregory's submissions, the AFBCMR Medical Advisor, Dr. Horace R. Carson, reviewed Mr. Gregory's case file and issued two additional advisory opinions. *Id.* at 195-201, 207-11. Dr. Carson stated that he had "strong agreement" with Col. Drummond's recommendation to deny Mr. Gregory's petition. *Id.* at 200. Dr. Carson noted that the VA considered several medical evaluations conducted well after Mr. Gregory's discharge in assigning the 60 percent rating for Ankylosing Spondylitis. *See id.* at 200, 210. Dr. Carson also acknowledged Dr. Pressly's June 2012 letter, but stated that "the provider's medical progress notes were not reflective of any periods of physician-directed bed rest due to incapacitating episodes[.]" *Id.* at 200 (emphasis omitted). And Dr. Carson opined that there was "no objective evidence of record" that would allow for a finding that Mr. Gregory's bilateral lower extremity radiculopathy was unfitting. *Id.* at 199. Nevertheless, Dr. Carson recommended retiring Mr. Gregory with a 40 percent disability rating for Ankylosing Spondylitis "as a fair compromise[.]" *Id.* at 200-01; *see also id.* at 211.

Mr. Gregory agreed with Dr. Carson that a 40 percent disability rating would be a "fair resolution" of his application, but requested that AFBCMR give serious consideration to a 60 percent rating. *Id.* at 203, 213.

In June 2018, the AFBCMR denied Mr. Gregory's application, finding that there was insufficient evidence of an error or injustice in Mr. Gregory's disability rating. *Id.* at 1-10. The AFBCMR acknowledged Dr. Carson's recommendation for a 40 percent disability rating, but it agreed with the opinions and recommendations of the AFPC Disability Office and Col. Drummond, and adopted the rationales expressed in those opinions. *Id.* at 9.

**F.    Court Proceedings And AFBCMR Proceedings And Decision On Remand**

In August 2018, Mr. Gregory filed his complaint in this Court, alleging that he should have received at least a 40 percent disability rating. Compl. 4-5. In February 2019, the Court granted our unopposed motion for a voluntary remand and instructed the AFBCMR to address "whether Mr. Gregory is entitled to a disability rating higher than 20 percent based upon 'chronic residuals' of his Ankylosing Spondylitis, and, if so, determine and explain what that disability rating should be[.]" Dkt. No. 15; AR 268.

In June 2019, Dr. Carson issued another advisory opinion. AR 269-73. Dr. Carson recommended that the board take one of two courses of action: 1) deny the petition because a rating higher than 20 percent would be inconsistent with the preponderance of clinical evidence present at the time Mr. Gregory entered the DES and at the time of final military disposition; or 2) grant a 40 percent disability rating based upon a 10 percent rating for moderate impairment of motion in each of his ankles/feet as chronic residuals, combined with the 20 percent rating he was previously assigned. *Id.* at 273.

Dr. Carson determined that Dr. Pressly's June 2012 letter was "inconsistent with previous trend of 'mild' disease in hand-written and typed progress notes, as recent as June 13, 2012[.]" *Id.* at 271. Dr. Carson also noted an October 2012 medical opinion from a different rheumatologist, Dr. Kevin L. Kempf, stating that Mr. Gregory's Ankylosing Spondylitis was "remarkably well-controlled" and Mr. Gregory was "doing extremely well[.]" *Id.* at 270 (emphasis omitted); *see also id.* at 242-43 . However, Dr. Carson suggested that, if the AFBCMR found Dr. Pressly's June 2012 letter "to be a plausibly accurate representation of the applicant's clinical status prior to his date of discharge," then a 40 percent rating may be appropriate. *Id.* at 271. Mr. Gregory did not respond to the advisory opinion. *Id.* at 266.

In October 2019, the AFBCMR issued its decision on remand, declining to increase Mr. Gregory's disability rating due to chronic residuals. *Id.* at 263-67. The board adopted the first option presented in Dr. Carson's June 2019 advisory opinion, finding that a disability rating higher than 20 percent "would be inconsistent with the preponderance of clinical evidence present at the 'snapshot' time upon entering the DES and at the time of final military disposition." *Id.* at 266.

## ARGUMENT

### I. Standard of Review

RCFC 52.1 provides for judgment upon the administrative record. *Banerjee v. United States*, 77 Fed. Cl. 522, 532 (2007). The Court's review of Government actions in military pay cases "is normally limited to the administrative record developed before the military board." *Bateson v. United States*, 48 Fed. Cl. 162, 164 (2000) (citation omitted). RCFC 52.1 is designed "to provide trial on a paper record, allowing fact-finding by the trial court." *Stine v. United States*, 92 Fed. Cl. 776, 791 (2010) (quoting *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005)). The "existence of genuine issues of material fact neither precludes the court from granting judgment upon the administrative record nor requires it to conduct evidentiary proceedings." *Peterson v. United States*, 104 Fed. Cl. 196, 204 (2012). Instead, factual questions must be resolved by reference to the administrative record, "as if [this Court] were conducting a trial on [that] record." *Bannum*, 404 F.3d at 1354.

In reviewing the actions of the agency, this Court does not serve as a "super correction board." *Stine*, 92 Fed. Cl. at 791 (citation omitted). "[R]eview of the administrative decision is limited to determining whether the . . . action was arbitrary, capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law[.]" *Heisig v. United States*, 719 F.2d

1153, 1156 (Fed. Cir. 1983) (citation omitted). "Plaintiff bears the heavy burden of proving by clear and convincing evidence that the board's decision was arbitrary and capricious." *Rose v. United States*, 35 Fed. Cl. 510, 512 (1996). The plaintiff can satisfy his considerable burden only by presenting "cogent and clearly convincing evidence" that the defendant's decision was arbitrary, capricious, or unlawful. *Dorl v. United States*, 200 Ct. Cl. 626, 633 (1973). Even if the plaintiff identifies an error in the administrative proceedings, the Court will not find for the plaintiff if the error was harmless. *See, e.g.*, *Fisher v. United States*, 81 Fed. Cl. 155, 158-59 (2008), *aff'd*, No. 2008-5094, 2010 WL 4009437 (Fed. Cir. 2010).

The standard of review "does not require a reweighing of the evidence, but a determination whether *the conclusion being reviewed* is supported by substantial evidence." *Heisig*, 719 F.2d at 1157 (emphasis in original). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Myers v. United States*, 50 Fed. Cl. 674, 688 n.32 (2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Furthermore, "[w]hen substantial evidence supports a board's action, and when that action is reasonable in light of all the evidence presented, the court will not disturb the result." *Banerjee*, 77 Fed. Cl. at 533 (citation omitted). "Stated otherwise, responsibility for determining whether a service member is fit or unfit to serve in the armed forces is not a judicial decision, and 'courts cannot substitute their judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence.'" *Id.* (citing *Heisig*, 719 F.2d at 1156). This Court "must recognize the strong presumption of regularity accompanying government proceedings, including that the military carries out its responsibilities properly, lawfully and in good faith." *Id.*

## II.    Mr. Gregory Has Not Demonstrated That The AFBCMR's Denial Of His Request To Increase His Disability Rating For Ankylosing Spondylitis Was Irrational, Unlawful, Or Unsupported By Substantial Evidence

Mr. Gregory has failed to demonstrate any error in the AFBCMR's decisions not to increase his 20 percent disability rating for his unfitting Ankylosing Spondylitis. First, the evidence in the administrative record does not support Mr. Gregory's claim that he had "incapacitating" exacerbations of his Ankylosing Spondylitis that would justify a 40 percent disability rating under the "active process" criteria of DC 5002. Second, the AFBCMR rationally determined that an increased disability rating for "chronic residuals" under DC 5002 would be inconsistent with preponderance of the medical evidence in the record.

### A.    VASRD DC 5002's Alternative Rating Criteria

Mr. Gregory's 20 percent disability rating was based upon VASRD DC 5002, which provides, in full:

> 5002 Arthritis rheumatoid (atrophic) As an active process:
>
> With constitutional manifestations associated with active joint involvement, totally incapacitating          …100
>
> Less than criteria for 100% but with weight loss and anemia productive of severe impairment of health or severely incapacitating exacerbations occurring 4 or more times a year or a lesser number over prolonged periods          …60
>
> Symptom combinations productive of definite impairment of health objectively supported by examination findings or incapacitating exacerbations occurring 3 or more times a year          …40
>
> One or two exacerbations a year in a well-established diagnosis          …20

For chronic residuals:

> For residuals such as limitation of motion or ankylosis, favorable or unfavorable, rate under the appropriate diagnostic codes for the specific joints involved. Where, however, the limitation of motion of the specific joint or joints involved is noncompensable under the codes a rating of 10 percent is for application for each such major joint or group of minor joints affected by limitation of motion, to be combined, not added under diagnostic code 5002. Limitation of motion must be objectively confirmed by findings such as swelling, muscle spasm, or satisfactory evidence of painful motion.

> NOTE: The ratings for the active process will not be combined with the residual ratings for limitation of motion or ankylosis. Assign the higher evaluation.

38 C.F.R. § 4.71a.

A service member may be assigned a disability rating under DC 5002 for his arthritic condition "[a]s an active process" or for "chronic residuals" of his arthritic condition, but not both. *See Petitti v. McDonald*, 27 Vet. App. 415, 419 n.2, 423 (2015). If the condition "is 'active,' then disability ratings from 20% to 100% are assignable depending upon the severity of the symptoms." *Id.* at 419 n.2. "Alternatively, if the [condition] is not 'active,' it may be rated on the basis of chronic residuals such as limitation of motion." *Id.*

**B.      The AFBCMR Rationally Declined To Rate Mr. Gregory Higher Than 20 Percent For His Ankylosing Spondylitis As An Active Process Due To A Lack Of Evidence Of Incapacitating Exacerbations Of His Condition**

The AFBCMR reasonably declined to increase Mr. Gregory's disability rating for his Ankylosing Spondylitis, as an active process, because it reasonably determined that there was insufficient evidence of "incapacitating" exacerbations of his disease prior to discharge.

To receive higher than a 20 percent rating for Ankylosing Spondylitis as an active process under DC 5002, Mr. Gregory must have had "[s]ymptom combinations productive of definite impairment of health objectively supported by examination findings or incapacitating

exacerbations occurring 3 or more times a year[.]" 38 C.F.R. § 4.71a (40 percent rating). Before the AFBCMR, Mr. Gregory argued that he met the second prong of this test, *i.e.*, "incapacitating exacerbations occurring 3 or more times a year." *See* AR 15. The AFBCMR reasonably determined that there was insufficient evidence of Mr. Gregory suffering incapacitating exacerbations three or more times per year leading up to discharge. *See id.* at 9, 146.

The AFBCMR defined "incapacitating," as used in DC 5002, to mean "requires bed rest prescribed by a physician and treatment by a physician." *Id.* at 146. Although DC 5002 does not specifically define "incapacitating," the definition relied upon by the AFBCMR is found in the same regulation under DC 5243 ("Intervertebral disc syndrome"). 38 C.F.R. § 4.71a ("For purposes of evaluations under diagnostic code 5243, an incapacitating episode is a period of acute signs and symptoms due to intervertebral disc syndrome that requires bed rest prescribed by a physician and treatment by a physician."). Moreover, "incapacitating" is defined to require "bed rest" in several other places in the VASRD. 38 C.F.R. §§ 4.88b, 4.97, 4.114, 4.130.[5] Accordingly, the AFBCMR's correctly interpreted the term "incapacitating exacerbation" to mean an exacerbation that "requires bed rest prescribed by a physician and treatment by a physician."

Relying upon medical progress notes and Mr. Gregory's own statements, the AFBCMR reasonably determined that there was insufficient evidence that Mr. Gregory suffered any such incapacitating exacerbations due to his Ankylosing Spondylitis. *See* AR 9, 146. For example, in May 2011, Mr. Gregory explained that, *before starting treatment*, he had "extremely bad"

---

[5] The only time where the VASRD defines "incapacitating" to not include bed rest is in 38 C.F.R. § 4.79, which includes an idiosyncratic definition of "incapacitating episode" for purposes of eye diseases, *i.e.*, for "the purposes of evaluation under 38 CFR 4.79, an incapacitating episode is an eye condition severe enough to require a clinic visit to a provider specifically for treatment purposes[.]"

stiffness and discomfort, but "still *continued to perform [his] duties* (even while in pain)." AR 120 (emphasis added). In the same memorandum, Mr. Gregory also stated that medications "considerably improved" his symptoms, and he had "not had any of the extremely debilitating symptoms" since starting treatment. *Id.* Around this time, Mr. Gregory also denied that "his pain is distracting or impairing to his PRP duties[.]" *Id.* at 97. Indeed, even back in May 2010, before he began taking Humira, Mr. Gregory stated that his pain was "[n]ot incapacitating." *Id.* at 235 (emphasis omitted).

These descriptions of Mr. Gregory's conditions are consistent with his commander's April 2011 recommendation to the MEB to retain Mr. Gregory, which stated that Mr. Gregory "maintains normal work hours performing additional [non-flying related] duties" and "has not missed coming into work and performing his additional duties" due to his condition. *Id.* at 115 (emphasis omitted). The commander also noted that, "[s]ince on treatment," Mr. Gregory's "flare ups have decrease significantly and he feels able to perform duties." *Id.* at 116.

Likewise, none of the progress notes from Mr. Gregory's treating rheumatologist, Dr. Pressly, between March 2010 and July 2012, state that Mr. Gregory suffered from "incapacitating" exacerbations, as defined in the VASRD. *See id.* at 127-35, 155-72, 175-82. None of the notes indicate that Dr. Pressly prescribed "bed rest" for Mr. Gregory. *See id.* Likewise, Dr. Pressly consistently described the severity of Mr. Gregory's symptoms as "mild" in these notes. *Id.* (capitalization omitted).[6]

The AFBCMR considered Dr. Pressly's June 2012 letter, *e.g.*, *id.* at 9, 146, which stated that Mr. Gregory "was presenting with symptoms including incapacitating episodes of 11-12 a

---

[6] In two notes from July 2010 and June 2012, the word "Moderate" was also circled to describe the severity of Mr. Gregory's symptoms. *Id.* at 127, 156.

year before treatment," but, "[w]ith treatment, the condition has stabilized and now [Mr. Gregory] only presents with 4-5 incapacitating episodes a year." *Id.* at 38. But Dr. Pressly's letter did not define "incapacitating episodes," *id.*, and the AFBCMR reasonably determined that Dr. Pressly's underlying notes and Mr. Gregory's own statements did not support the severity of Mr. Gregory's Ankylosing Spondylitis suggested by Dr. Pressly's letter. *See id.* at 9, 146.

The AFBCMR also considered the fact that the VA's 2017 rating decision found "severely incapacitating exacerbations occurring four or more times a year" in assigning Mr. Gregory a 60 percent rating for his Ankylosing Spondylitis. *See id.* at 9, 193, 200, 210-11. The AFBCMR reasonably declined to adopt the VA's 2017 rating. "VA decisions are 'not determinative of the issues involved in military disability retirement cases.'" *Ward v. United States*, 133 Fed. Cl. 418, 431 (2017) (citation omitted). Although both the military and VA utilize the VASRD in issuing disability ratings, their rating decisions can differ because the military takes a snapshot of the servicemember's condition at the time of separation from the service, while the VA evaluates and adjusts a veteran's disability ratings throughout the individual's lifetime. *See id.*; *Stine*, 92 Fed. Cl. at 795. The AFBCMR recognized that the VA considered evidence of medical examinations that occurred years after Mr. Gregory's discharge. *See id.* at 9, 192, 200, 210. As demonstrated above, the AFBCMR independently evaluated evidence of the severity of Mr. Gregory's condition prior to his discharge and reasonably determined that he did not suffer any incapacitating exacerbations that would justify an increased disability rating.

Accordingly, the AFBCMR's decision not to increase Mr. Gregory's disability rating for his active Ankylosing Spondylitis was rational and supported by substantial evidence.

**C.      The AFBCMR Rationally Declined To Rate Mr. Gregory For Chronic
             Residuals Of Ankylosing Spondylitis**

The AFBCMR also reasonably rejected Mr. Gregory's request to increase his disability

rating based upon "chronic residuals" of his Ankylosing Spondylitis.  *See id.* at 266.

Mr. Gregory has argued that he suffered "from chronic residuals of limitation of range of

motion of his ankles, neck, and back as a result of ankylosing spondylitis," which entitles him to

a 40 percent disability rating based upon a minimum 10 percent rating for each affected joint.

*Id.* at 28.  The AFBCMR rationally determined, however, that the preponderance of the evidence

demonstrates that a rating of higher than 20 percent for chronic residuals would be inconsistent

with the preponderance of clinical evidence as Mr. Gregory was processed for his medical

discharge.  *See id.* at 266.

When the MEB evaluated Mr. Gregory in March 2011, it found "[f]ull range of motion in

all extremities" and that Mr. Gregory's "[n]eck is supple with full range of motion," with "[n]o

neck pain."  *Id.* at 123-25.  Also, in an October 31, 2012 report, shortly after Mr. Gregory's

discharge, Dr. Kempf stated that a "complete musculoskeletal exam was performed and was

pertinent for all joints to have a full and complete ROM [range of motion] without warmth,

erythema, or synovitis in the upper and lower extremities."  *Id.* at 242.  And, as noted above,

Dr. Pressly frequently described the severity of Mr. Gregory's symptoms as mild in his March

2010 to July 2012 progress notes.  *See id.* at 127-35, 155-72, 175-82.

Although Dr. Pressly opined, in his June 2012 letter, that Mr. Gregory's Ankylosing

Spondylitis is "a chronic condition" that affects his "limitation of motion in his neck, back,

[sacroiliac] joints and feet/ankles to varying degrees," *id.* at 38, Dr. Carson opined that

Dr. Pressly's description of Mr. Gregory's clinical status in June 2012 was "inconsistent with

[the] previous trend of 'mild' disease in hand-written and typed progress notes[.]"  *Id.* at 271.

The AFBCMR reasonably relied upon Dr. Carson's advisory opinion, particularly where Mr. Gregory was given a chance to respond to it and declined to do so. *Id.* at 266.[7]

This Court's standard of review "does not require a reweighing of the evidence, but a determination whether the conclusion being reviewed is supported by substantial evidence." *Heisig*, 719 F.2d at 1157 (emphasis omitted). The AFBCMR determined that the preponderance of the evidence does not support an increased rating due to chronic residuals, s*ee* AR 265-66, and Mr. Gregory has not demonstrated anything irrational about that decision.

### III. The AFBCMR Rationally Declined To Rate Mr. Gregory's Radiculopathy Sciatic Involvement In His Legs Because They Were Not Unfitting Conditions

The AFBCMR reasonably rejected Mr. Gregory's request to assign him two additional 10 percent disability ratings for radiculopathy sciatic involvement in each of his legs. *See id.* at 9, 144, 146.

Before the AFBCMR, Mr. Gregory erroneously sought these additional ratings because the VA assigned them based upon an examination before his discharge. *See* AR 16. The Air Force may only rate unfitting conditions, whereas the VA can generally rate any service-connected disability. *See* AFI 36-3612, ¶ 1.9 (A10) ("the VA may rate any service-connected condition without regard to fitness, whereas the Air Force may rate only those conditions which make a member unfit for continued military service"); *see also* 10 U.S.C. §§ 1201(a), (b)(3)(B),

---

[7] The AFBCMR correctly declined to adopt Dr. Carson's alternative option of awarding Mr. Gregory a 40 percent rating based upon a 10 percent rating for each ankle/foot as chronic residuals combined with the 20 percent rating Mr. Gregory already has for his Ankylosing Spondylitis as an active process. *See* AR 266, 273. The VASRD is clear that a service member is rated under DC 5002 *either* for the arthritis as an active process *or* for chronic residuals of the condition, *but not both*. 38 C.F.R. § 4.71a ("The ratings for the active process *will not be combined* with the residual ratings for limitation of motion or ankylosis.") (emphasis added). Accordingly, even if Dr. Carson or the board believed that Mr. Gregory was entitled to a 10 percent rating for each ankle/foot as chronic residuals, which they did not, *see* AR 265-66, 270-71, Dr. Carson's alternative option for a 40 percent rating was inconsistent with the VASRD.

1203(a), (b)(4); *Stine*, 92 Fed. Cl. at 795 ("pursuant to [a United States Navy (Navy) regulation similar to AFI 36-3612, ¶ 1.9], the Navy only assigns disability percentages to those conditions it finds are 'unfitting.'") (citation omitted).

Both AFBCMR medical reviewers found no evidence that Mr. Gregory's radiculopathy sciatic involvement was unfitting. *See* AR 146, 199. And the AFPC Disability Office noted that Mr. Gregory did not argue before the formal PEB or SAFPC that he had any further unfitting conditions beyond Ankylosing Spondylitis. *Id.* at 144. It is Mr. Gregory's burden to demonstrate a material error or injustice to the AFBCMR. 32 C.F.R. § 865.4(a). Here, Mr. Gregory failed to do so.

Accordingly, the AFBCMR reasonably declined to assign disability ratings to Mr. Gregory's radiculopathy sciatic involvement in his legs.

## IV. Mr. Gregory Has Waived Any Claim That His MEB Was Insufficient And, In Any Event, He Has Not Demonstrated Any Prejudicial Legal Error In His MEB

In his complaint, Mr. Gregory alleges that the "Air Force failed to comply with statutes and regulations and to properly conduct an MEB addressing all of Plaintiff's conditions and disabilities with the information required to accurately rate his disabilities[.]" Compl. 4. There are several problems with this argument.

First, Mr. Gregory waived this argument because he did not allege any errors in his MEB before the AFBCMR. Second, Mr. Gregory has not demonstrated that the MEB violated any regulation. Third, Mr. Gregory has failed to demonstrate that any alleged errors in his MEB prejudiced him.

### A. Mr. Gregory Waived His Claim That His MEB Was Insufficient

Mr. Gregory waived his allegations of error by the MEB by not raising them before the AFBCMR.

In *Metz v. United States*, the United States Court of Appeals for the Federal Circuit held that the plaintiff had waived his argument that his separation from the Air Force was involuntary when he failed to raise that argument during his AFBCMR proceedings. 466 F.3d 991, 999 (Fed. Cir. 2006); *see also United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952) ("[O]rderly procedure and good administration require that objections to the proceedings of an administrative agency be made while [the agency] has an opportunity for correction in order to raise issues reviewable by the courts."). The Court found waiver even though the plaintiff could have challenged the voluntariness of his separation in this Court without first petitioning the AFBCMR. *See Metz*, 466 F.3d at 998.

Here, although Mr. Gregory argued before the *SAFPC* that his MEB was insufficient, AR 33-34, he did not raise these arguments before the *AFBCMR. See id.* at 14-17, 150-53, 203-06, 213. Indeed, Mr. Gregory expressly incorporated the arguments regarding *chronic residuals* from his SAFPC appeal, into his AFBCMR application, but did not incorporate the section of his SAFPC appeal regarding the MEB process. *See id.* at 14 ("While this case file has been transferred to me as counsel of record, I do hereby adopt the well-crafted arguments raised by my predecessor in [Mr. Gregory's SAFPC appeal] and incorporate them by reference into this petition- *rating residuals*, particularly the bilateral foot pain in the Petitioner's service treatment records and rated as bilateral calcaneal spurring at 10% each") (emphasis added).

Accordingly, Mr. Gregory has waived his argument that his MEB was insufficient.

**B.      Mr. Gregory Has Not Demonstrated That The MEB Violated Any Law**

Even if Mr. Gregory had not waived his allegations regarding his MEB, Mr. Gregory has not demonstrated that his MEB was legally insufficient.

Before the SAFPC, Mr. Gregory alleged that the MEB violated a 2008 DoD "Policy Memorandum" allegedly requiring that MEBs "meet the minimum criteria outlined in the VA General Medical Exam and the applicable Compensation and Pension Automated Medical Information Exchange (AMIE) worksheets," by failing to take range of motion measurements for his neck, ankles, and feet, and not using a goniometer to measure the range of motion in his joints. *See id.* at 33 (citation omitted). There are several problems with this argument.

First, the policy memorandum merely requires the military departments to "publish policies that ensure" that MEBs meet the minimum criteria cited by Mr. Gregory. *See* Policy Memorandum on Implementing Disability-Related Provisions of the National Defense Authorization Act of 2008 (Pub L. 110-181), ¶ E3.P1.2.6.1 (A7). Accordingly, the MEB could not have violated this provision.

Second, assuming, for the sake of argument, that there was a binding regulation requiring Air Force MEBs to perform the evaluations Mr. Gregory claims were required, Mr. Gregory has not demonstrated that these evaluations were not performed. The MEB narrative summary stated that Mr. Gregory had "[f]ull range of motion in all extremities" and that his "[n]eck is supple with full range of motion." AR 124-25. Accordingly, it appears that the MEB did check the range of motion of Mr. Gregory's neck, feet, and ankles, and found no issues. Also, although the MEB narrative summary does not state whether a goniometer was used to measure Mr. Gregory's range of motion, there is a presumption of regularity that "public officers have properly discharged their official duties." *Butler v. Principi*, 244 F.3d 1337, 1340 (Fed. Cir. 2001); *see also Banerjee*, 77 Fed. Cl. at 533 ("this court must recognize the strong presumption of regularity accompanying government proceedings, including that the military carries out its responsibilities properly, lawfully and in good faith."). Accordingly, to the extent the MEB was

required to use a goniometer in its evaluation of Mr. Gregory, the Court presumes that it did so, absent evidence to the contrary, which Mr. Gregory has not supplied. *See* AR 33 (Mr. Gregory simply noting that "the report is silent as to how the range of motion was conducted").

Mr. Gregory also claims that the MEB's measurements did not "did not take into account [his] condition during flares," *id.,* but neglects to mention that he reported to the MEB that he "has had no flare-ups and no symptoms." *Id.* at 123 (emphasis omitted). Mr. Gregory further erroneously alleges that the MEB did not "note additional functional impact" of his back pain with motion. *Id.* at 33. The MEB opined that Mr. Gregory's "condition and symptoms have been successfully treated and are controlled through his current medication regimen. He is currently active and able to perform all required duties." *Id.* at 126.

Accordingly, Mr. Gregory has not demonstrated any legal error by the MEB.

### C.    Mr. Gregory Has Not Demonstrated That Any Error By The MEB Was Prejudicial

Even if the MEB's evaluation was insufficient in the ways alleged by Mr. Gregory, he has not demonstrated how this was prejudicial error. Mr. Gregory had the opportunity to present whatever medical evidence was necessary to address his conditions to the formal PEB, SAFPC, and AFBCMR. Indeed, Mr. Gregory submitted a substantial amount of additional medical evidence to the AFBCMR. *See id.* at 154-82, 184-94. As demonstrated in Section II-III, above, the AFBCMR reasonably determined that Mr. Gregory had not demonstrated an entitlement to an increased disability rating. There is no reason to believe that any additional testing or medical analysis by the MEB would have changed that.[8]

---

[8]  Mr. Gregory's complaint also alleges that the "Air Force failed . . . to properly conduct the PEB and to rate his conditions as required by law and regulation, and to properly conduct administrative appellate review prior to and after Mr. Gregory's separation from the Air Force." Compl. 4-5. It is unclear from these allegations whether Mr. Gregory is alleging any procedural

## CONCLUSION

For the foregoing reasons, the Court should grant the Government judgment on the administrative record.

<div style="margin-left: 50%;">

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

s/ Douglas K. Mickle
DOUGLAS K. MICKLE
Assistant Director

s/ William P. Rayel
WILLIAM P. RAYEL
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
PO Box 480
Ben Franklin Station
Washington, DC 20044
Telephone: (202) 616-0302
Facsimile: (202) 307-0972
E-mail: William.Rayel@usdoj.gov

Attorneys for Defendant

</div>

Of Counsel:

Major Gregory J. Morgan
Litigation Attorney
Air Force Legal Operations Agency
1500 West Perimeter Rd., Suite 1370
Joint Base Andrews-Naval Air Facility, MD 20762

January 10, 2020

---

errors with the PEB, SAFPC, or AFBCMR appeals or what those alleged errors might be. Mr. Gregory did not allege any procedural violations of law by the PEB or SAFPC in his AFBCMR appeal. *See* AR 11, 14-17. Should Mr. Gregory allege any specific procedural errors by the PEB, SAFPC, or AFBCMR in his cross-motion for judgment on the administrative record, we will address them in our response.