# APPENDIX

# INDEX TO APPENDIX

Document                                                                                              Page

Excerpts from Department of Defense Instruction 1332.38, dated July 10, 2006........................A1

Excerpt from DoD Undersecretary for Personnel and Readiness Policy Memorandum
    on Implementing Disability Related Provision of the National Defense Authorization
    Act of 2008 (Pub L. 110-181), dated October 14, 2008 ....................................................A4

Excerpts from Air Force Instruction 36-3212, dated November 27, 2009 ...................................A9



# Department of Defense

# INSTRUCTION

**NUMBER** 1332.38
November 14, 1996

*Incorporating Change 1, July 10, 2006*
ASD(FMP)

SUBJECT: Physical Disability Evaluation

References: (a)  DoD Directive 1332.18, "Separation or Retirement for Physical Disability," November 4, 1996
          (b)  Title 10, United States Code
          (c)  Sections 3502, 5532, 6303, and 18332 of title 5, United States Code
          (d)  Sections 206 and 502 of title 37, United States Code
          (e)  through (k), see enclosure 1

## 1. PURPOSE

This Instruction implements policy, assigns responsibilities, and prescribes procedures under References (a) and (b) for:

    1.1.  Retiring or separating Service members because of physical disability.

    1.2.  Making administrative determinations under references (c) and (d) for Service members with Service-incurred or Service aggravated conditions.

    1.3.  Authorizing a fitness determination for members of the Ready Reserve who are ineligible for benefits under reference (b) because the condition is unrelated to military status and duty.

## 2. APPLICABILITY

This Instruction applies to the Office of the Secretary of Defense (OSD), the Military Departments (including the Coast Guard when it is operating as a Military Service in the Navy), the Chairman of the Joint Chiefs of Staff, and the Combatant Commands (hereafter referred to collectively as "the DoD Components").  The term "Military Services," as used herein, refers to the Army, the Navy, the Air Force and the Marine Corps.

E3.P1.  ENCLOSURE 3 PART 1

OPERATIONAL STANDARDS FOR THE DES

E3.P1.1.  Overview of the DES.

Under the supervision of the Secretary concerned, each DES shall consist of four elements:

E3.P1.1.1.  Medical evaluation by Medical Evaluation Boards (MEBs), Ready Reserve physical examinations, and TDRL periodic physical examinations.

E3.P1.1.2.  Physical disability evaluation by Physical Evaluation Board (PEBs), to include appellate review.

E3.P1.1.3.  Service member counseling.

E3.P1.1.4.  Final disposition by appropriate personnel authorities.

E3.P1.2.  Medical Evaluation

E3.P1.2.1.  Purpose.  The medical evaluation element of the DES shall document under departmental regulations the medical status and duty limitations of Service members referred into the DES.

E3.P1.2.2.  Type of Evaluation.  Medical evaluation is required for personnel undergoing a Medical Evaluation Board when:

E3.P1.2.2.1.  The Service member is on active duty under orders specifying a period of more than 30 days.

E3.P1.2.2.2.  The Service member is a Reserve component member referred for a duty related impairment.

E3.P1.2.2.3.  The member is on the TDRL and due for a periodic physical examination. Either a physical examination or a MEB is required when a Reserve component member is referred for impairments unrelated to the member's military status and performance of duty (see definition for nonduty-related impairments).  Before submission to the PEB, physical examinations accomplished by other than a medical treatment facility (MTF) shall be forwarded through command channels to the medical approving authority designated by the respective Service for review and approval.

E3.P1.2.3.  Content.  MEBs, TDRL physical examinations, and Reserve component physical examinations shall document the full clinical information of all medical conditions the Service member has and state whether each condition is cause for referral into the DES.  (See enclosure 4 of this Instruction.)  Clinical information shall include a medical history, appropriate physical examination, medical tests and their results, medical and surgical consultations as necessary or

of the member's medical condition on the member's ability to perform his or her normal military duties and to deploy or mobilize, as applicable. When the member has been reassigned for medical purposes (for example, to a medical holding unit) the MTF will obtain this statement from the member's former unit commander.

E3.P1.2.7.3. Pertinent personnel records, as required by the member's Service, to establish the member's military history.

E3.P1.2.7.4. Official document identifying the next-of-kin, court appointed guardian, or trustee when a Service member is determined incompetent. (See subsection E3.P1.2.4. of Part 1.)

E3.P1.2.8. Ready Reserve Nonduty-Related Impairments. Cases of Ready Reserve members with nonduty-related impairments (see definition) will be referred to the PEB in accordance with Service regulations.

E3.P1.3. Physical Disability Evaluation

E3.P1.3.1. Purpose. The physical disability evaluation element of the DES shall determine the fitness of Service members with medical impairments to perform their military duties; and for members determined unfit for duty-related impairments, their entitlement to benefits under Chapter 61 of 10 U.S.C. (reference (b)). Physical disability evaluation shall be conducted by PEBs and include the elements in subsections E3.P1.3.2. through E3.P1.3.5., below.

E3.P1.3.2. Informal PEB. The informal PEB will conduct a documentary review without the presence of the Service member for providing initial findings and recommendations.

E3.P1.3.3. Formal PEB. Eligible Service members shall be provided a minimum of one opportunity for a formal PEB to fulfill the statutory requirement of Section 1214 of reference (b) for a full and fair hearing when requested by a Service member being separated or retired for physical disability under Chapter 61 of reference (b). The Service member's declination of a formal PEB will be documented by the Physical Evaluation Board Liaison Officer (PEBLO) counselor. Appearance before a formal PEB may be in person, through a designated representative, or via video teleconferencing media.

E3.P1.3.3.1. Eligibility

E3.P1.3.3.1.1. Service members determined unfit by the informal PEB shall be granted a formal PEB upon request.

E3.P1.3.3.1.2. Active duty and Ready Reserve members determined fit do not have an entitlement to a formal PEB since a finding of fit does not cause involuntary separation for physical disability.

E3.P1.3.3.1.3. TDRL members determined fit shall be entitled to a formal PEB since removal from the TDRL represents a change in military status.



**UNDER SECRETARY OF DEFENSE**
4000 DEFENSE PENTAGON
WASHINGTON, D.C. 20301-4000

OCT 1 4 2003

MEMORANDUM FOR SECRETARIES OF THE MILITARY DEPARTMENTS
　　　　　　　　　　CHAIRMAN OF THE JOINT CHIEFS OF STAFF
　　　　　　　　　　GENERAL COUNSEL OF THE DEPARTMENT OF
　　　　　　　　　　　　DEFENSE
　　　　　　　　　　INSPECTOR GENERAL OF THE DEPARTMENT OF DEFENSE

SUBJECT: Policy Memorandum on Implementing Disability-Related Provisions of the
　　　　　　National Defense Authorization Act of 2008 (Pub L. 110-181)

References: (a) Department of Defense Directive 1332.18, "Separation or Retirement
　　　　　　　　　for Physical Disability," November 4, 1996
　　　　　　(b) Department of Defense Instruction (DoDI) 1332.38, "Physical Disability
　　　　　　　　　Evaluation," November 14, 1996
　　　　　　(c) DoDI 1332.39, "Application of the Veterans Administration Schedule
　　　　　　　　　for Rating Disabilities," November 14, 1996 (hereby rescinded)
　　　　　　(d) Policy Guidance for the Disability Evaluation System and Establishment
　　　　　　　　　of Recurring Directive-Type Memoranda, dated May 3, 2007
　　　　　　(e) Directive-Type Memorandum (DTM) on Implementing Disability-
　　　　　　　　　Related Provisions of the National Defense Authorization Act of 2008
　　　　　　　　　(Pub L. 110-181), dated March 13, 2008

　　　This policy memorandum provides supplemental and clarifying guidance on
implementing those disability-related provisions of the National Defense Authorization Act
of 2008 (Pub L. 110-181), which are time-sensitive and impact immediate decisions
pertaining to the rating of conditions and the operations of medical and physical evaluation
boards. As indicated in the attached guidance, this policy memorandum revises and
supplements references.

　　　Military Departments shall no longer utilize reference (c) but shall use direction
contained in this policy memorandum. The Assistant Secretary of Defense (Health
Affairs) will continue to revise these directions contained herein in collaboration with the
Department of Veterans Affairs (VA). As a result of this collaboration, guidance on the
application and interpretation of the VA Schedule for Rating Disabilities will be
provided, as required.

　　　The attached guidance incorporating these revisions will, when appropriate, be
formally consolidated and published in the appropriate issuances. Until such time and as
required, the Department will continue to issue regular policy memoranda pertaining to

A4

these issuances, reflecting changes in statute and consideration of findings and recommendations from the various commissions, task forces, and study groups. Publications such as this memorandum are integral in the Department's continuous improvement process related to the care, reintegration, and compensation of our wounded, ill, and injured Service members. In addition, the Department will continue to collaborate with the VA in developing a case tracking and management information system that will assist in the implementation of policy and program improvements.

This policy is issued pursuant to the delegation of authority to the USD (P&R) in paragraph 6.21 of DoDD 5124.02, "Under Secretary of Defense for Personnel and Readiness," June 23, 2008. This policy memorandum was coordinated with VA and is effective immediately.

David S. C. Chu

Attachments:
As stated

cc:
Assistant Secretaries of the Military Departments
   (Manpower and Reserve Affairs)
Director, Wounded, Ill, Injured Senior Oversight Committee Staff
Under Secretary of Veterans Affairs (Veterans Benefit Administration)
Under Secretary of Veterans Affairs (Veterans Health Administration)

**REVISED AND NEW POLICIES TO IMPLEMENT THE NATIONAL DEFENSE
AUTHORIZATION ACT (NDAA) FOR FISCAL YEAR 2008**

The policies below implement specific disability-related policies and sections of the FY 2008 NDAA (Pub. L. 110-181) and **rescind** DoDI 1332.39, Application of the Veterans Administration Schedule for Rating Disabilities, November 14, 1996. The respective issuances cited below are revised as indicated. Text in **BOLD** is new/added. Text with ~~strikethrough~~ is deleted. References cited in the numbered paragraphs below pertain to the reference listings in the respective DoD issuances. Military Departments will implement these policies immediately.

___

Updated DES policies and instructions in compliance with NDAA 08; Section 1612(a)-(b), "Medical Evaluation and Physical Disability Evaluations of Recovering Service Members"

- *Add an additional paragraph under the existing Policy section of the DoDI 1332.38, "Physical Disability Evaluation," November 14, 1996) to read as follows:*

**4.4. The National Defense Authorization Act for Fiscal Year 2008 (NDAA), provides for specific changes and enhancements to the disability processing of "recovering Service members" as defined by the NDAA. The definition of recovering Service members in the NDAA is narrow and most of the Service members in the DES would not receive that designation in the Disability Evaluation Process. In order to ensure uniformity and equitable attention to the needs of all Service members processing through the DES, timeliness and case load standards put forth in this Memorandum apply to all Service members in the DES, unless otherwise stated in this Memorandum.**

- *Renumber paragraphs in 5. Responsibilities (DoDI 1332.38, "Physical Disability Evaluation," November 14, 1996) to allow for the inclusion of the following paragraph for responsibilites within the Department of Defense with the following:*

**5.5. The General Counsel of the Department of Defense shall, in consultation with the General Counsels and with the Judge Advocate Generals of the Military Department, provide all overall legal guidance on all issues concerning the provisions of legal counsel during the Physical Disability Evaluation process as set forth in Enclosure 8.**

**5.6. The Secretaries of the Military Departments shall:**

- *Add paragraph 5.5.10. (DoDI 1332.38, "Physical Disability Evaluation," November 14, 1996), with the following:*

**5.5.10. With advice from their respective Judge Advocate General, ensure policy, procedures, training and human resource practices are established to support appropriate legal counsel within the DES.**

- *Replace E3.P1.2.6 (DoDI 1332.38, "Physical Disability Evaluation," November 14, 1996, with the following:*

**E3.P1.2.6. Additional instructions for Disability Medical Evaluation.**

**E3.P1.2.6.1. The Military Departments shall publish policies that ensure:**

**E3.P1.2.6.1.1. Service disability medical examinations for the DES meet the minimum criteria outlined in the VA General Medical Exam, and the applicable Compensation and Pension Automated Medical Information Exchange (AMIE) worksheets.**

**E3.P1.2.6.1.2. Upon request of a Service member referred into the DES, an impartial physician or other appropriate health care professional (not involved in the Service member's MEB process) is assigned to the Service member to offer a review of the medical evidence presented by the narrative summary or MEB findings. In most cases, this impartial health professional should be the Service member's primary care manager (PCM). The impartial health professional will have no more than 5 calendar days to advise the Service member on whether the findings of the MEB adequately reflect the complete spectrum of injuries and illness of the Service member.**

**E3.P1.2.6.1.3. After review of findings with the assigned impartial health care professional, a Service member shall be afforded an opportunity to request a rebuttal of the results of the MEB. A Service member shall be afforded 7 calendar days to prepare a rebuttal to the convening medical authority. The convening medical board authority shall be afforded 7 calendar days to consider the rebuttal and return the fully documented decision to the Service member. In the case of a MEB rebuttal, the MEB shall not be forwarded to the PEB until the rebuttal is finalized and MEB results indicate the Service member may be unfit for duty. The fully documented rebuttal will be included with the MEB information sent to the PEB. Exception to timelines may be granted by an authority appointed by the Secretary concerned.**

**E3.P1.2.6.1.4. Medical evaluation participants shall be trained in accordance with this issuance and existing policy.**

- *Revise E3.P1.3 (DoDI 1332.38, "Physical Disability Evaluation," November 14, 1996), with the following:*

E3.P1.3.2.2. Informal PEB. The informal PEB will conduct a documentary review without the presence of the Service member for providing initial findings and recommendations. **The Service member will be provided a minimum of 10 calendar days from receipt of the informal findings to rebut the findings of the Informal PEB and request a Formal PEB. In addition to this timeline, Military Departments shall publish timelines for presentation and consideration of cases.**

E3.P1.3.3. Formal PEB. Eligible Service members shall be provided a minimum of 1 opportunity for a formal PEB to fulfill the statutory requirement of Section 1214 of reference (b)

2

for a full and fair hearing when requested by a Service member being separated or retired for physical disability under Chapter 61 of reference (b). The Service member's declination of a formal PEB will be documented by the Physical Evaluation Board Liaison Officer (PEBLO). Appearance before a formal PEB may be in person, through a designated representative, or via video teleconferencing media or by any other means as determined by the Secretary of the Military Department concerned.

- *Revise E3.P1.4 (DoDI 1332.38, "Physical Disability Evaluation," November 14, 1996, with the following:*

E3.P1.4. Counseling

E3.P1.4.1. Purpose. The counseling element of DES shall afford Service members undergoing evaluation by the DES the opportunity to be advised of the significance and consequences of the determinations made and the associated rights, benefits, and entitlements. **The Military Departments will publish and provide (or make available) standard information booklets in hardcopy and electronic form that provide general and specific information on the MEB and PEB processes. These publications will include the rights and responsibilities of the Service member while navigating through the DES. The information will be made available at the servicing medical treatment facilities (MTFs) and Physical Evaluation Board (PEB).**

- *Replace E3.P1.6 (DoDI 1332.38, "Physical Disability Evaluation," November 14, 1996, with the following:*

E3.P1.6: Time standards for Case Processing.

**E3.P1.6.1. Referral. When a competent medical authority determines a Service member has one or more condition(s) which is suspected of not meeting medical retention standards, he or she will refer the Service member into the DES at the point of hospitalization or treatment when a member's progress appears to have medically stabilized (and the course of further recovery is relatively predictable) and when it can be reasonably determined that the member is most likely not capable of performing the duties of his office, grade, rank or rating. Referral will be within 1 year of being diagnosed with a medical condition(s) that does not appear to meet medical retention standards, but may be earlier if the examiner determines that the member will not be capable of returning to duty within 1 year.**

**E3.P1.6.2. Specialty Consultations. Service members who have been referred in the DES, and who require specialty care consultation shall be scheduled and seen within TRICARE standards.**

**E3.P1.6.3. Commander Documentation: All official military personnel documents required for disability processing shall be received by the PEB within 5 calendar days upon request to the Service member's unit commander. These documents include but are not limited to: Commander's letter, copy of Line of Duty Determinations and investigations (if**

3

BY ORDER OF THE
SECRETARY OF THE AIR FORCE

AIR FORCE INSTRUCTION 36-3212

2 FEBRUARY 2006

*Incorporating Through Change 2, 27 November 2009*

*Personnel*

*PHYSICAL EVALUATION FOR RETENTION,
RETIREMENT, AND SEPARATION*



**COMPLIANCE WITH THIS PUBLICATION IS MANDATORY**

**ACCESSIBILITY:** This publication is available digitally on the AFDPO WWW site at:
**http://www.e-publishing.af.mil.**

**RELEASABILITY:** There are no releasability restrictions on this publication.

OPR: HQ AFPC/DPSD

Supersedes: AFI 36-3212, 30 September 1999

Certified by: HQ AFPC/DPP
(Col Steven M. Maurmann)
Pages: 98

This instruction describes how to retire or discharge Air Force (AF) members who are unfit to do their military duties because of physical disability. It outlines procedures for examining, and discharging or retiring members from the temporary disability retired list (TDRL). It also provides disposition instructions for unfit members who remain on active duty in a limited assignment status (LAS). **Chapter 8** applies to certain Air National Guard (ANG) and United States Air Force Reserve (USAFR) members not on extended active duty (EAD). This instruction carries out the requirements of Title 10, United States Code (U.S.C.), chapter 61, and Department of Defense Directive (DoDD) 1332.18, *Separation or Retirement for Physical Disability*, November 4, 1996, DoD Instructions (DoDI) 1332.38, *Physical Disability Evaluation,* and 1332.39, *Application of the Veterans Administration Schedule for Rating Disabilities*, November 14, 1996, and implements Air Force Policy Directive (AFPD) 36-32, *Military Retirements and Separations*.

This instruction requires collecting and maintaining information protected by the Privacy Act of 1974, under 10 U.S.C., chapter 61, and Executive Order (EO) 9397. The Privacy Act statement required by Air Force Instruction (AFI) 37-132, *Air Force Privacy Act Program,* is in AF Forms 1185, **Statement of Record Data**, and 1186, **Retention Limited Assignment Status**. System of Records Notice F035 AF PC, *Military Personnel Records System,* applies. Submit proposed supplements and operating instructions to AF Personnel Center, Directorate of Personnel Program Management, USAF Physical Disability Evaluation Division (HQ AFPC/DPPD), for review and approval before publication. Process supplements that affect any military personnel function as shown in AFI 37-160, volume 1, table 3.2, *The Air Force Publications and Forms Management Programs--*

(*EXCEPTION:* Member is eligible for disability processing if in this status in order to participate in educational program or for an emergency purpose.)

**1.4. Processing Special Cases.**

1.4.1. CM Sentence Not Involving Dismissal or Punitive Discharge. Members who are in military confinement are not eligible for processing until sentence is completed and they are placed in a returned to duty status.

1.4.2. Unauthorized Absence. HQ AFPC/DPPD and the PEBLO stop processing a case when a member is absent without leave (AWOL), in deserter status, or in the hands of civil authorities and do not resume processing until the member returns to military control and HQ AFPC/DPPD determines the member is eligible for disability processing.

1.4.3. Civil Court Action. When civil criminal court action is pending and the member is present for duty, the PEBLO will continue processing after the member's commander clears the member for appearance at the PEB.

1.4.4. Dual Action. Process as dual action, disability cases on members with an unfit finding who are also pending administrative separation (including Second Lieutenants being processed for "not qualified for promotion"), or who apply for nondisability retirement or discharge in lieu of CM action according to AFIs 36-3203, *Service Retirements*, 36-3206, *Administrative Discharge Procedures*, 36-3207, *Separating Commissioned Officers*, 36-3208, *Administrative Separation of Airmen* or 36-3209, *Separation Procedures for Air National Guard and Air Force Reserve Members.* SAFPC makes the final disposition. If SAFPC does not accept the retirement or discharge in lieu of CM action, the CM will proceed. If the sentence does not result in punitive discharge, then the disability case can be processed. *NOTE:* Administrative action continues in any disability case that results in a fit determination.

**1.5. Delay of Processing.** Medical Treatment Facilities (MTFs) will not delay disability processing for nondisabling conditions such as elective surgery. If a member needs emergency surgery, treatment, or hospital care, consider a delay in retirement or discharge only when it could cause a change in the disability disposition or rating.

**1.6. Benefits.** The Air Force disability system will not retain, retire, or discharge a member for disability solely to increase Air Force retirement or discharge benefits.

**1.7. Disability Ratings.** The PEB assigns a percentage rating to a medical defect or condition when the member is physically unfit for duty. By law, (10 U.S.C., chapter 61), the Air Force assigns ratings from the Department of Veterans' Affairs (VAs') *Schedule for Rating Disabilities* (VASRD) and implementation guidance contained in DoDI 1332.39. (*EXCEPTION:* Reserve and ANG fitness/unfitness determinations as described in **Chapter 8**.)

**1.8. VASRD Distribution.** The VA sends the VASRD to HQ AFPC/DPPD. HQ AFPC/DPPD assigns a control number to each copy and sends a copy to the PEBLOs and to evaluating boards and staff members in the disability system. PEBLOs maintain control of the publication within their respective MTF.

**1.9. Air Force and VA Ratings.** The VA administers its program under Title 38, U.S.C.; the Air Force under Title 10. Although both use the VASRD in assessing disability ratings, a prime difference between the two systems is that the VA may rate any service-connected condition without regard to fitness, whereas the Air Force may rate only those conditions which make a member unfit for continued military service (see paragraph **A2.21**).

## Chapter 5

## FINAL REVIEW AND DISPOSITION

*Section 5A—Secretary of the Air Force Personnel Council (SAFPC)*

**5.1. SAFPC Review.**

    5.1.1. DELETED.

    5.1.2. DELETED.

        5.1.2.1. DELETED

        5.1.2.2. DELETED

        5.1.2.3. DELETED

**5.2. Special Assistants to the Director, SAFPC.** The Director, SAFPC, may appoint one or more officers, comparable grade civilians, or senior noncommissioned officers to serve in an additional duty capacity as special assistants to the Director, SAF Personnel Council. SAFPC selects special assistants from among members permanently assigned to HQ AFPC/DPPD. Under strict guidelines, SAFPC authorizes the special assistants to sign for the Director, SAFPC, in certain routine cases, announce the SAF decision, and direct final disposition on behalf of the Secretary.

**5.3. When Special Assistants May Act.** The Director, SAFPC, authorizes officers designated as special assistants to sign for the Director in the following circumstances:

    5.3.1. The member concurs with the PEB findings, and the case does not otherwise require referral to SAFPC.

    5.3.2. The Air Force Personnel Board (AFPB) directs a formal PEB (if one hasn't been held previously) and member concurs with the FPEB and case does not meet the criteria of paragraph **5.4**

    5.3.3. Member is removed from TDRL for failing to report for examination after 5 years.

    5.3.4. The informal PEB recommends removal from TDRL (Fit). Member either fails to reply to correspondence advising of the recommendation, or does not concur and requests a formal PEB but fails to report for the formal hearing.

    5.3.5. The member has received the findings of the formal PEB and either fails to acknowledge or respond to them, or the member nonconcurs but fails to submit a rebuttal.

**5.4. Cases Which Must Be Forwarded to SAFPC.** Forward cases to SAFPC for action:

    5.4.1. When the member does not concur and submits a rebuttal to the recommended findings of the PEB.

    5.4.2. When the member has more than 8 years of active service and the recommended disposition is separation from active service for physical disability under Title 10 U.S.C., Section 1207 (intentional misconduct, willful neglect, or unauthorized absence), without entitlement to disability benefits.