IN THE UNITED STATES COURT OF FEDERAL CLAIMS

CHRISTOPHER R. GREGORY,        )
                               )
            Plaintiff,         )
                               )
        v.                     )        No. 18-1322C
                               )        (Senior Judge Horn)
THE UNITED STATES,             )
                               )
            Defendant.         )

## PLAINTIFF'S RESPONSE BRIEF AND CROSS MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

s/ Jason E. Perry
JASON E. PERRY
10540 Galleria Street,
Wellington, FL 33414
203-887-6967 (phone)
800-576-5648 (fax)
jason.perry@jeperrylaw.com

Attorney for Plaintiff

Pursuant to Rule 52.1(c) of the Rules of the United States Court of Federal Claims ("RCFC"), the plaintiff, Mr. Gregory, respectfully requests that the Court deny the defendant's motion for judgment on the administrative record and grant this cross motion and enter judgment upon the administrative record in favor of Mr. Gregory. The United States Air Force Physical Evaluation Board ("PEB") found that Mr. Gregory was unfit for duty due to Ankylosing Spondylitis rated at 20 percent disabling and the Air Force approved this finding, separating him from the military with severance pay on August 28, 2012. For the reasons stated in this cross motion, the decision of the Air Force, both originally, and on appeal to the Air Force Board for the Correction of Military Records denying him at least a 40% rating was arbitrary and capricious, contrary to law and regulations, and unsupported by substantial evidence.

## ISSUE PRESENTED

Whether the decision of the Air Force Board for the Correction of Military Records (AFBCMR) to deny Mr. Gregory's request for an increased disability rating for his unfitting Ankylosing Spondylitis was arbitrary and capricious, contrary to law and regulations or unsupported by substantial evidence.

## STATEMENT OF THE CASE

Pursuant to RCFC 5.4(a)(2), the plaintiff is satisfied with the defendant's statement of the case, including the nature of the case and the statement of facts contained in the Defendant's Motion for Judgment on the Administrative Record.  Def Mot. 2-10.

**ARGUMENT**

**STANDARD OF REVIEW**

RCFC 52.1 provides for judgment upon the administrative record. The Court's review of Government actions in military pay cases "is normally limited to the administrative record developed before the military board." *Bateson v. United States*, 48 Fed. Cl. 162, 164 (2000) (citation omitted). RCFC 52.1 is designed "to provide trial on a paper record, allowing fact-finding by the trial court." *Stine v. United States*, 92 Fed. Cl. 776, 791 (2010) (quoting *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005)). The "existence of genuine issues of material fact neither precludes the court from granting judgment upon the administrative record nor requires it to conduct evidentiary proceedings." *Peterson v. United States*, 104 Fed. Cl. 196, 204 (2012). Instead, factual questions must be resolved by reference to the administrative record, "as if [this Court] were conducting a trial on [that] record." *Bannum*, 404 F.3d at 1354. In reviewing the actions of the agency, this Court does not serve as a "super correction board." *Stine*, 92 Fed. Cl. at 791 (citation omitted). "[R]eview of the administrative decision is limited to determining whether the . . . action was arbitrary, capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law[.]" *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983) (citation omitted).

The standard of review "does not require a reweighing of the evidence, but a determination whether *the conclusion being reviewed* is supported by substantial evidence." *Heisig*, 719 F.2d at 1157 (emphasis in original). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Myers v. United States*, 50 Fed. Cl. 674, 688 n.32 (2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"Under the substantial evidence rule, all of the competent evidence must be considered, whether original or supplemental, and whether or not it supports the challenged conclusion." *Heisig v. United States*, 719 F.2d 1153, 1157 (Fed. Cir. 1983). (Emphasis added). A decision by a military correction board must be based on "a balanced consideration of all the evidence available and presented. A naked conclusion and mere recitation that the opinion is based upon all of the evidence without an analysis of the evidence in writing (as here), is inimical to a rational system of administrative determination and ultimately inadequate." *Beckham v. United States*, 392 F.2d 619, 622-623 (Ct. Cl. 1968) (citations omitted).

"Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. The reviewing court should not attempt itself to make up for such deficiencies; we may not supply a reasoned basis for the agency's action that the agency itself has not given. *SEC v. Chenery Corp.*, 332 U.S. 194, 196, 67 S. Ct. 1575, 91 L. Ed. 1995 (1947) [reh'g denied and reh'g denied sub nom. *SEC v. Fed. Water & Gas Corp.* 332 U.S. 783, 68 S. Ct. 26, 92 L. Ed. 367 (1947)]."
*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43-44, 103 S. Ct. 2856, 77 L. Ed. 2d 443 (1983) (other citations omitted).

**1. The Defendant has failed to demonstrate that it is entitled to Judgement on the Administrative Record.**

The defendant argues that, "First, the evidence in the administrative record does not support Mr. Gregory's claim that he had "incapacitating" exacerbations of his Ankylosing

Spondylitis that would justify a 40 percent disability rating under the "active process" criteria of

DC 5002." Def Mot. 14.

This is belied by the letter from Mr. Gregory's treating rheumatologist, Dr. Pressly, dated

June 22, 2012, which states:

> "Christopher was presenting with symptoms including incapacitating episodes of 11-12 a
> year before treatment with treatment, the condition has stabilized and now Christopher
> only presents with 4-5 incapacitating episodes a year. While stabilized, Christopher still
> has lasting chronic affects of this disease process. This is not an acute disease process and
> the patient has manifested chronic symptoms associated with an active disease process.
> The motion in the affected joints is limited due to the nature of the condition evidenced
> by spasm and evidence of painful motion. The chronic nature of this condition affects
> Christopher's limitation of motion in his neck, back, SI joints and feet/ankles to varying
> degrees."

AR 38.

The AFBCMR Medical Advisor referenced this note, which gave a basis for an increase to 40%.

> "However, should the Board find the letter from the applicant's rheumatologist, dated
> June 22, 2012, to be a **plausibly accurate** representation of the applicant's clinical status
> prior to his date of discharge, albeit inconsistent with previous trend of "mild" disease in
> hand-written and typed progress notes, as recent as June 13, 2012, then a **minimum 40%
> rating** should be considered.
> Specifically, the rheumatologist's letter disclosed that the applicant had 'previously
> presented with **11 to 12 incapacitating episodes per year** before treatment,' and that it
> was "reduced to **4 to 5 incapacitating episodes a year**, after stabilization through
> treatment." The provider asserted, "This is **not an acute disease process** and [that] the
> patient has manifested **chronic symptoms** associated with an **active disease process**."
> The rheumatologist continued, "The **motion in the affected joints is limited** due to the
> nature of the condition evidenced by **spasm** and evidence of **painful motion**."

AR 271.

Note that, if Dr. Pressly's description is accurate, this warrants a rating of 60% under DC

5002. ("Less than criteria for 100% but with weight loss and anemia productive of severe

impairment of health or severely incapacitating exacerbations occurring 4 or more times a year

or a lesser number over prolonged periods 60%.") It is unclear why the AFBCMR Medical

Advisor did not credit a 60% rating, but, it seems he was striking a "compromise." (In a previous

opinion, he stated, "the current Medical Advisor recommends retiring the applicant with a 40%

disability rating as a fair compromise; albeit short of the 60% assigned by the DVA." AR 200. While understandable, the regulations do not contemplate a compromise reduction in rating when the criteria for a higher rating is met. In any event, the plaintiff's preceding counsel countered that rejection of Dr. Pressly's opinion would be inappropriate absent a showing that the facts upon which the opinion was based was dubious or untenable. "a. While the Medical Consultant seeks to reject the evidence provided by the Petitioner's treating rheumatologist in Enclosure Four, this would be inappropriate unless the historical facts upon which a medical conclusion is based are dubious or untenable. See *Shipwash v. Brown*, 8 Vet.App. 218 (1995), and *Colvin v. Derwinski*, Vet.App. 175 (1991)." AR 152.

The defendant asserts that the "The AFBCMR defined 'incapacitating,' as used in DC 5002, to mean "requires bed rest prescribed by a physician and treatment by a physician." Id. at 146." Def. Mot. 15. However, this is untrue. The BCMR IMA Medical Consultant adopted this definition. AR 146. The AFBCMR did not adopt this definition or discuss this issue in either of its opinions. AR 2-10, 264-267. Therefore, the defendant cannot rely on this definition as a basis to argue for judgment on the administrative record. Otherwise, this would be an impermissible post-hoc rationalization by counsel for a position not taken by the agency. *See Burlington Truck Lines v. United States*, 371 U.S. 156, 168-169 (U.S. 1962).

The defendant, mistaken in the agency's adoption of incapacitating episodes requiring physician directed bed rest, goes on to argue that while DC 5002 does not define incapacitating episodes, that the use of the definition in DC 5243 (a condition that Mr. Gregory does not have) for Intervertebral disc syndrome was correct because there are several instances in the VA Schedule for Rating Disabilities ("VASRD") that use this definition. Def. Mot. 15. Should the court find some significance to the IMA Medical Consultant's use of this definition, plaintiff

6

counters that the fact that this term was specifically defined in several places in the VASRD, but not in the criteria in DC 5002, means that the Department of Veterans' Affairs ("DVA," or "VA") omitted this definition for a reason. If the VA specifically did not use a definition in DC 5002 that it felt necessary to define with specificity in other disabilities, it must be presumed that the VA Secretary did so for a reason, i.e., that the definition of bed rest should not apply in this instance. In any event, the defendant's error in attributing this definition to the AFBCMR is error that shows their motion should be denied.

The defendant repeated its error above in attributing the recommendations of the IMA Medical Consultant to the AFBCMR and further just stated a conclusory support for the denial of Mr. Gregory's application. "But Dr. Pressly's letter did not define "incapacitating episodes," *id.*, and the AFBCMR reasonably determined that Dr. Pressly's underlying notes and Mr. Gregory's own statements did not support the severity of Mr. Gregory's Ankylosing Spondylitis suggested by Dr. Pressly's letter. *See id.* at 9, 146." Def. Mot. 17. This argument seems to miss several important points about the timing of Mr. Gregory's statements. First, it takes his position, prior to the Formal PEB hearing regarding his argument for fitness, as dispositive. Mr. Gregory points out that his disability evaluation system process took more than a year to process. His case was referred to the MEB and considered in March of 2011. AR 122-126. His condition worsened over time and he was not separated until August 28, 2012. This accounts, in part, for his earlier statements arguing for fitness being different from his ultimate arguments for a retirement finding. Additionally, at the time of his PEB boards, he was not entitled to legal representation until the findings of the Informal PEB, which occurred on June 8, 2011. Compl. ¶8. A person unfamiliar with the laws, regulations, and standards, should be forgiven in not understanding the issues. It was only after he had retained legal counsel that he understood the standards and

realized that he was, in fact and law, unfit to perform his duties due to his disability.

Next, the defendant argued that the evidence of Mr. Gregory's VA rating of 60% for his Ankylosing Spondylitis was properly rejected by the AFBCMR due to the timing of the decision.

> "The AFBCMR also considered the fact that the VA's 2017 rating decision found 'severely incapacitating exacerbations occurring four or more times a year' in assigning Mr. Gregory a 60 percent rating for his Ankylosing Spondylitis. See id. at 9, 193, 200, 210-11. The AFBCMR reasonably declined to adopt the VA's 2017 rating. "VA decisions are 'not determinative of the issues involved in military disability retirement cases.'" Ward v. United States, 133 Fed. Cl. 418, 431 (2017) (citation omitted). Although both the military and VA utilize the VASRD in issuing disability ratings, their rating decisions can differ because the military takes a snapshot of the servicemember's condition at the time of separation from the service, while the VA evaluates and adjusts a veteran's disability ratings throughout the individual's lifetime. See id.; Stine, 92 Fed. Cl. at 795. The AFBCMR recognized that the VA considered evidence of medical examinations that occurred years after Mr. Gregory's discharge. See id. at 9, 192, 200, 210. As demonstrated above, the AFBCMR independently evaluated evidence of the severity of Mr. Gregory's condition prior to his discharge and reasonably determined that he did not suffer any incapacitating exacerbations that would justify an increased disability rating."

Def. Mot. 17.

The defendant's argument that the 2017 rating decision granting Mr. Gregory a 60% rating for his Ankylosing Spondylitis was rejected because it was issued years after his discharge fails to appreciate the fact that his rating was awarded as of the date after his discharge from the Air Force (which is the first date possible to award a rating from the VA, as a requirement of a DVA rating is being a veteran). The DVA, applying and analyzing the facts of Mr. Gregory's case determined that he was entitled to a 60% rating. AR 186, 191-193. This granted him an effective date of entitlement of the day after his discharge. *Id*. The defendant argues that because this decision came years later, it means that the AFBCMR was correct in rejecting this rating. However, the VA has rules, found in case law about "staged" ratings, which would apply if a condition's severity was changed over time and during the pendency of an appeal.

The VA has the authority to grant staged ratings, which are "separate ratings…for separate periods of time based on facts found." *Fenderson v. West*, 12 Vet. App. 119, 126 (1999).  In cases where staged ratings are appropriate, the Secretary must consider all of "the evidence of record from the time of the veteran's application." *Id*. at 127.  Staged ratings apply for both initial ratings and claims for increased disability ratings.  *Hart v. Mansfield*, 21 Vet. App. 505, 209 (2007).

The AFBCMR failed to address this issue. Additionally, Mr. Gregory argues that the Air Force's determinations and positions regarding the rules for a different agency should not be given more deference than the determinations of the VA applying its own regulations. The 60% rating granted by the VA was dismissed without meaningful discussion and the discussion that was offered did not address the issues raised by the VA's assignment of a 60% rating for the same condition that the Air Force assigned a 20% rating to.

2. **The AFBCMR's Decision Denying Mr. Gregory An Increased Rating Of At Least 40% Was Arbitrary And Capricious, Contrary To Law, And Unsupported By Substantial Evidence**

The bulk of our argument is the corollary to the above arguments in opposition to the defendant's arguments. The AFBCMR failed to properly consider Dr. Pressly's statements showing that Mr. Gregory met the rating criteria for 60% under an active process. The defendant has argued facts that are in error, i.e., the definition of incapacitating episodes that were not adopted by the AFBCMR. The defendant has failed to address the issues and the findings of the VA in assigning Mr. Gregory a 60% rating for his Ankylosing Spondylitis.

Because Dr. Pressly expressly stated facts that show a 60% rating criteria have been met, the Court should find that the AFBCMR erred. Additionally, the actual award of the same rating

by the DVA should be considered as strong evidence that the AFBCMR did not properly consider or address as the proper rating.

## CONCLUSION

The plaintiff has shown that the AFBCMR's decision denying him an increase in his disability rating to at least 40% and as much as 60% is arbitrary and capricious, contrary to law, and unsupported by substantial evidence. The defendant has failed to show that its motion for judgment on the administrative record should be granted. Therefore, Mr. Gregory respectfully requests that the Court deny the defendant's motion and grant his motion for judgment on the administrative record.

Respectfully submitted,

s/ Jason E. Perry
JASON E. PERRY
10540 Galleria Street,
Wellington, FL 33414
203-887-6967 (phone)
800-576-5648 (fax)
jason.perry@jeperrylaw.com

DATED: February 18, 2020          Attorney for Plaintiff